# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 09-cv-00092-CMA

KAREN DIXON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION
_____

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Karen Dixon challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for social security disability benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Plaintiff presents three issues on appeal:

    (1)    Whether "new" evidence from Austin Corbett, M.D., requires remand or reversal.

    (2)    Whether the ALJ erred in finding that Plaintiff's fibromyalgia was not a severe impairment.

    (3)    Whether the ALJ failed to include all of the relevant limitations in determining Plaintiff's residual functional capacity ("RFC").

(Doc. # 8 at 2.)

Having considered the parties' arguments and reviewed the record, the Court AFFIRMS the ALJ's decision.

## I. BACKGROUND

Plaintiff was born on December 4, 1964, and was forty-one years old at the onset of her alleged disability. She has an Associate's Degree in Early Childhood Education and previously worked as a daycare worker and preschool teacher. Plaintiff alleges that she became disabled on September 6, 2006, due to ankylosis sponditis, heel spurs, plantar fascitis, Achilles tendinitis, severe depression, bipolar disorder, Haglund deformity, and tarsal tunnel syndrome. (Doc. # 4 at 44; Doc. # 4-2 at 21; Doc. # 4-3 at 4-7.)

On November 16, 2006, Plaintiff filed an application for disability insurance benefits. On March 14, 2007, the Social Security Administration denied Plaintiff's application, and Plaintiff filed a timely request for a hearing before an ALJ. (Doc. # 4 at 18.)

### A. ADMINISTRATIVE HEARING

On April 15, 2008, the ALJ held a hearing, at which Plaintiff testified. With respect to her pain, she testified that she still experienced pain that "goes up and down" her right leg and in her lower back and knees. She also testified about her depression. She admitted that although Dr. James Spadoni, her treating psychiatrist, had recommended counseling, she had not yet gone. She was unable to explain her failure to do so. Plaintiff testified that she was unable to work a full eight-hour day, even after her foot surgery, because of continued pain, tiredness (she stated she took two to three

2

30- to 40-minute naps a day) and difficulty concentrating. She believed her fatigue was due to fibromyalgia and depression. (Doc. # 4 at 35-39.)

Nora Dunn, a vocational expert ("VE"), also testified. She opined on a series of hypothetical questions posed by the ALJ. (*Id.* at 44-46.) The ALJ first asked whether an individual with the following characteristics could perform any of Plaintiff's past relevant work:

> a person who has vocational factors similar to those of [Plaintiff], including age, education, and work skills history. If such person is able to perform work at the light level of exertion, which does not require more than occasional stooping or climbing ramps and stairs, and does not require any climbing of ladders, ropes, and scaffolds, would such person – and not more than occasional crawling.

(*Id.* at 45). The VE answered "yes" – that person could perform Plaintiff's past relevant work as a preschool teacher, which has an SVP (or skill level) of seven.[1] (*Id.*)

The ALJ then modified the hypothetical, limiting the hypothetical person to no more than six hours of standing and walking in an eight hour day. Could that person still be preschool teacher? The VE again answered "yes." (*Id.*)

The ALJ again modified the hypothetical, this time limiting the hypothetical person to work that has an SVP not greater than three. Could that person perform any of Plaintiff's past relevant work? The VE answered "no." (*Id.*) She did, however, identify other potential jobs, with skill levels of two, that existed in significant numbers in the state and national economy. Those included a document preparer (740 jobs in Colorado, 50,400 jobs nationwide), a telephone quotation clerk (1,535 jobs in Colorado,

---

[1] SVP stands for "specific vocational preparation." It corresponds with the skill level needed to perform a given job. *See* 20 C.F.R. §§ 404.1568 and 416.968; SSR 00-4p.

78,000 jobs nationwide), and escort vehicle driver (1,760 jobs in Colorado, 111,000 nationwide).

**B.     ADMINISTRATIVE DECISION**

On June 2, 2008, the ALJ – evaluating Plaintiff's claim in terms of the five step process called for in the regulations[2] – issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. Specifically, the ALJ found:

- That Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010.

- At step one, that Plaintiff has not engaged in substantial gainful activity since September 6, 2006, the alleged onset date.

- At step two, that Plaintiff has the following severe impairments: history of right tarsal tunnel syndrome status-post release; depression; and degenerative disc disease of the lumbar spine at L4-5.

- At step three, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

- That Plaintiff has the RFC to perform light work, except no more than the occasional stooping, or climbing ramps and stairs, crawling; and no climbing ladders, ropes or scaffolds; walk and/or stand 6 hours in an eight hour workday; sit no more than six hours in an eight hour workday; and to perform work at a skill level (SVP) of 3.

- Regarding credibility, that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms (*e.g.*, inability to sit, stand, or walk for long periods; needing naps; inability to do many household chores; and being in lots of pain) are incredible to the extent they are inconsistent with the RFC assessment.

- At step four, that Plaintiff is unable to perform her past relevant work.

---

[2]   20 C.F.R. § 404.1520(a)(4).

- At step five, given Plaintiff's age, education, work experience, and RFC, that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.

(Doc. # 4 at 18-26.)

Given her finding at step five, the ALJ concluded that Plaintiff had not been under a disability from September 6, 2006 through the date of the ALJ's decision (June 2, 2008). In drawing her conclusions, the ALJ evaluated the medical evidence in the following manner.

### 1. Plaintiff's Alleged Disabilities

#### a. Foot Ailment

With respect to her foot ailment, on January 19, 2007, Plaintiff underwent surgery on her right foot to treat her right tarsal tunnel syndrome. The ALJ observed that within two to three weeks after surgery, on February 1, 2007, Plaintiff's treating podiatrist, Dr. Lee Fleming, noted that Plaintiff was "doing well, minimal pain medications needed." At that same visit, Dr. Fleming gave Plaintiff an orthotic for her right foot so that she could begin partial weight bearing. Many months later, on July 19, 2007, Plaintiff again visited with Dr. Fleming. She explained that she had not come sooner because of family issues, an ear infection, and because the pain in her foot was "doing very well." (Doc. # 4-3 at 58, 60.)

Dr. Fleming completed a work assessment of Plaintiff on May 2, 2007, which the ALJ discredited. Dr. Fleming assessed that Plaintiff was limited to less than full time work, with standing for one hour, up to 15 minutes at a time; walking 30 minutes, up to 10 minutes at a time; and sitting five hours, up to three hours at a time. Dr. Fleming also assessed that Plaintiff was unable to perform postural activities and was not to use

5

her right foot for foot controls. The ALJ found that Dr. Fleming's assessment was inconsistent with other evidence that Plaintiff's condition was improving. The ALJ further found that Dr. Fleming, as Plaintiff's foot doctor, never treated Plaintiff for an impairment that affects her capacity to sit. This fact undermined Dr. Fleming's assessment regarding Plaintiff's ability to sit for prolonged periods or engage in postural activity. Accordingly, the ALJ accorded no weight to Dr. Fleming's assessment. (Doc. # 4 at 23, 53-57, 201.)

### b.     *Depression (including bi-polar and anxiety)*

In contrast to Dr. Fleming's assessment, the ALJ gave great weight to the March 9, 2007 mental RFC assessment of the State's agency physician, James F. Dyde, M.D. Dr. Dyde noted that Plaintiff retains the ability to care for herself independently, care for her son and grandson, cook simple meals, shop, count change, handle savings and checking accounts, watch television, work on a computer, follow written and spoken instructions, and can complete a form independently and legibly. Based on his review, Dr. Dyde determined that there were only mild limitations in Plaintiff's performance of her daily activities, moderate difficulties in maintaining social functioning, mild difficulties in concentration, persistence, or pace. (Doc. # 4-3 at 25-39.)

The ALJ also considered a January 15, 2007 medical report issued by a consultative examiner, Heatherlyn Cleare-Hoffman, Psy. D. With respect to Plaintiff's mental status functioning, Dr. Cleare-Hoffman noted that Plaintiff displayed good memory; maintained good rapport throughout the exam; was oriented to time, person, place and situation; displayed good abstract and reasoning skills, though Plaintiff indicated poor concentration. To the extent Plaintiff was experiencing stress,

6

Dr. Cleare-Hoffman reasoned that some of the stress may have been due to Plaintiff's upcoming leg surgery. (Doc. # 4-3 at 4-7.)

The ALJ also considered the medical reports of Plaintiff's treating psychiatrist, Dr. Spadoni. Dr. Spadoni began treating Plaintiff on April 16, 2007, though he had observed Plaintiff for about two years. When Dr. Spadoni began treating Plaintiff, he noted that her "cognitive functions seem quite intact." He added that her [t]hought content reveals no delusional or prepsychotic materials." (*Id.* at 75.)

In his treatment notes – dating from April 16, 2007 to November 26, 2007 – Dr. Spadoni noted that Plaintiff did not appear to be in physical pain. By July 9, 2007, Dr. Spadoni noted that Plaintiff was "subjectively feeling better," though sleep was "still a problem." As the ALJ noted, however, Dr. Spadoni never indicated that Plaintiff was suffering from excessive sleepiness or an inability to perform daily activities. Because none of Plaintiff's treating physicians had diagnosed her with bipolar disorder or anxiety, the ALJ determined that Plaintiff's alleged bipolar disorder and anxiety were not medically determinable. However, the ALJ determined that Plaintiff's depression and complaints of pain were severe and factored those conditions into her assessment of Plaintiff's RFC. The ALJ concluded that Plaintiff needed work at an SVP level of three or less. (Doc. # 4 at 24-35; Doc. # 4-3 at 69-75.)

### c. Back Issues

The ALJ considered evidence of degenerative disc disease of the lumbar spine at L4-5 and fibromyalgia and noted that Plaintiff only complained to her treating physician, Dr. James Zimmer, of back pain on two occasions, namely, January 2 and January 8, 2007. In March 2007, Plaintiff again experienced back pain after falling down some stairs. Plaintiff did not complain of pain during her later visits in May, June, or July of 2007. On September 19, 2007, an MRI showed that the SI joint was normal, even though there was evidence that she had degenerative disc disease at L4-5. As Dr. Austin Corbett, Plaintiff's treating rheumatologist noted, drugs such as nabumetone, Vicodin, Cymbalta, and diltiazem provided Plaintiff some relief for her back pain. On January 9, 2008, Plaintiff reported to her treating physician, Dr. Zimmer, that she had been experiencing back pain for two months. Plaintiff, however, did not report any further back pain during her January 31 and February 6, 2008 visits with Dr. Zimmer. Based on the foregoing, the ALJ concluded that Plaintiff's back pain was relatively mild. (Doc. # 4 at 21-22; Doc. # 4-3 at 61; Doc. # 4-4 at 2-5, 10-11.)

### d. Fibromyalgia

The ALJ considered record entries concerning Plaintiff's alleged fibromyalgia. Noting the inconsistent findings, the ALJ determined that Plaintiff's fibromyalgia was relatively mild. On April 17, 2007, Dr. Corbett noted that Plaintiff complained of chronic aches and pains, though a "joint exam [did] not show inflammatory changes." Five months later, on September 19, 2007, Dr. Corbett noted that Plaintiff "continues to

complain of diffuse soft tissue pain and tenderness consistent with fibromyalgia." He also noted, however, that Plaintiff had no inflammatory joint findings. By December 19, 2007, Dr. Corbett determined that Plaintiff had fibromyalgia. However, during the same time, Dr. Spadoni's medical reports – from April through November 2007 – noted that Plaintiff did not appear to be in any physical pain. Based on these inconsistencies, the ALJ found that Plaintiff's fibromyalgia was relatively mild. (Doc. # 4 at 21-22; Doc. # 4-3 at 61, 63, 69-75; Doc. # 4-4 at 7.)

### 2. Plaintiff's Credibility

As to Plaintiff's credibility, the ALJ found that Plaintiff's complaints of pain were exaggerated in light of the overall evidence in the record. For example, though Plaintiff experienced pain, such pain was controlled during various periods. Specifically, in February and July 2007, Plaintiff's foot pain was improving and manageable. Though Plaintiff experienced back pain in September 2007, medication had reduced it. Plaintiff's credibility was also undermined by unemployment claims she submitted from the third quarter of 2006 through the first quarter of 2007. By filing for unemployment, Plaintiff held herself out as being ready, willing, and able to work full time. As the ALJ noted, "[b]ecause her [unemployment] application indicates that she was able to work, this (sic) some evidence that she was not disabled." Finally, the ALJ discredited a letter from Plaintiff's husband in which he alleged that Plaintiff "is in the bed with pain for days . . . she cannot clean or do laundry . . . [I] feel she will be wheelchair bound within the next 3-5 years." The ALJ determined that the letter was "highly exaggerated in light of the overall medical evidence." The ALJ also noted that Plaintiff's testimony concerning her need to nap throughout the day does not comport with her statements to her

9

physicians. Neither Plaintiff's treating physicians' reports nor the state doctors' reports indicate a need to nap throughout the day. (Doc. # 4 at 23, 24; Doc. # 4-2 at 65; Doc. # 4-3 at 58-59, 61.)

Based on this evaluation of Plaintiff's medical history and the testimony at the hearing, the ALJ denied Plaintiff's application for disability benefits.

## C. PLAINTIFF'S APPEAL

On December 3, 2008, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final administrative decision for purposes of judicial review. On January 16, 2009, Plaintiff filed a complaint challenging Defendant's denial of disability benefits. After the parties filed their briefs, the Court heard oral argument on November 2, 2009. (Doc. # 4 at 5-8; Doc. # 1; Doc. # 16.)

## III. ANALYSIS

## A. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In so reviewing, the

Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

**B.    EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If a decision regarding the claimant's disability can be reached at any step in the process, further evaluation is unnecessary. *Williams*, 844 F.2d at 750.

## C. DISABILITY DETERMINATION

Plaintiff argues that her case requires reversal or remand for three reasons: (1) "new" evidence from Dr. Corbett; (2) the ALJ's error in not finding that Plaintiff's fibromyalgia was severe; and (3) the ALJ's error in not including all of the relevant limitations in Plaintiff's RFC. The Court addresses each in turn.

### 1. Plaintiff's New Evidence

As a rule of thumb, "[t]he ALJ's decision should [be] evaluated based solely on the reasons stated in the decision." *Robinson v. Barnhardt*, 366 F.3d 1084 (10th Cir. 2004). Specifically, new evidence should not be considered unless it is (a) new, (b) material and (c) related to the period on or before the date of the ALJ decision. *See Chambers v. Barnhardt*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted).

Plaintiff's "new" evidence is a document entitled "Medical Assessment of Ability to do Work Related Activities (Physical)," completed by Dr. Corbett on July 29, 2009–several months after the April 15, 2008 hearing. In it, Dr. Corbett indicates that Plaintiff can occasionally lift and carry up to twenty pounds; sit two hours at a time and four hours in an eight-hour workday; stand one hour at a time and no more than two hours in an eight-hour workday; and walk two hours at a time and no more than one hour in an eight-hour workday. He concludes that Plaintiff is limited to seven hours of sitting, standing, and walking during an eight-hour workday. (Doc. # 8-2 at 2.)

Plaintiff argues this report requires a remand because it "directly contradicts" the ALJ's RFC assessment[3] in that Plaintiff cannot complete an eight-hour workday. (Doc. # 10 at 2.) As an initial matter, the Court notes that this evidence has been evaluated before, by the Appeals Council, which stated that it "[did] not provide a basis for changing the [ALJ's] decision." (Doc. # 4 at 5-6.) The Court agrees.

The evidence appears to relate to the period before the ALJ's decision. But is it new or material? "Evidence is material to the determination of disability if there is a reasonable possibility that it would have changed the outcome." *Threet v. Barnhart*, 353 F.3d 1185 (10th Cir. 2003) (internal quotation marks and brackets omitted). Dr. Corbett's report is neither new nor material. Dr. Corbett fails to identify what particular medical or clinical findings support his new assessment. In fact, as Plaintiff's counsel conceded during oral argument, Dr. Corbett's new evidence is based only on his *past* evaluations of Plaintiff, nothing new. Dr. Corbett's past treatment notes were before the ALJ. At best, then, this "new" evidence is simply a fresh take on old evidence. The Court is not persuaded that it presents a reasonable possibility of changing the outcome. Accordingly, the ALJ's determination remains supported by substantial evidence.

---

[3] The ALJ found that Plaintiff had the RFC to perform light work, except no more than the occasional stooping, or climbing ramps and stairs, crawling; and no climbing ladders, ropes or scaffolds; walk and/or stand 6 hours in an eight hour workday; sit no more than six hours in an eight hour workday; and to perform work at a skill level (SVP) of 3. (Doc. # 4 at 20.)

### 2. The ALJ's Assessment of Plaintiff's Fibromyalgia

Plaintiff also contends that the ALJ erred by failing to assess Plaintiff's alleged fibromyalgia as severe.

> Fibromyalgia, previously called fibrositis, is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue. It is a chronic condition, causing long-term but variable levels of muscle and joint pain, stiffness and fatigue. The disease is poorly-understood within much of the medical community and is diagnosed entirely on the basis of patients' reports and other symptoms. Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body. Fibromyalgia can be disabling.

*Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (internal citations, quotation marks, brackets, and ellipses omitted).

The ALJ decided that Plaintiff's fibromyalgia was not severe at step two of the process. "At step two, the claimant must show that [she] has a medically severe impairment or combination of impairments." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. Basic work activities are:

> abilities and aptitudes necessary to do most jobs, including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.

*Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (citations and quotation marks omitted).

In contrast, an impairment or combination is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.[4] "[W]hile the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient." C*owan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (citing *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)).

Here, there was evidence that Plaintiff suffered from fibromyalgia. On September 19, 2007, Dr. Corbett noted that Plaintiff "continues to complain of diffuse soft tissue pain and tenderness consistent with fibromyalgia." (Doc. # 4-3 at 61.) By December 19, 2007, Dr. Corbett had determined that Plaintiff had fibromyalgia. (Doc. # 4-4 at 7.) Dr. Corbett, however, did not elaborate on this finding. Moreover, his diagnosis is tempered by other evidence. During a period encompassing those same three months (from May 2007 through January 2008), Dr. Spadoni's medical reports noted that Plaintiff did not appear to be in any physical pain. (Doc. # 4-3 at 69-75.) Fibromyalgia, as described above, involves "widespread pain in all four quadrants of the body." *Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004); *also see Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that one of the principal symptoms of fibromyalgia is "pain all over").

Accordingly, based on the lack of consistent findings regarding Plaintiff's fibromyalgia and some inconsistencies in the evidence, the ALJ could have found, and

---

[4] *See* 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p.

here did find, that Plaintiff's fibromyalgia was relatively mild. (Doc. # 4 at 22.) Because that conclusion is supported by substantial evidence in the record, the Court affirms it.

### 3. The ALJ's Alleged Failure To Include All The Relevant Limitations In The Residual Functional Capacity ("RFC")

Plaintiff's third contention is that the ALJ erred by failing to include Dr. Dyde's limitations in determining Plaintiff's RFC. (Doc. # 8 at 6-7.) Dr. Dyde, a State agency physician, noted that Plaintiff was "moderately limited" in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. # 4-3 at 21-23.) He also noted that Plaintiff should have limited contact with the general public. (*Id.* at 23.)

At the outset, the Court notes that "RFC assessment is a task reserved for the ALJ, not doctors." *Redding v. Astrue*, No. 08-cv-00861, 2009 WL 1392063, at *5 (D. Colo. May 18, 2009) (unpublished) (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). While it is true that an ALJ must consider all of a claimant's impairments in assessing RFC,[5] an ALJ is not required to discuss all the evidence she considers. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."); *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) ("The record must demonstrate that the ALJ

---

[5] 20 C.F.R. § 404.1545(a)(2)

16

considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.")[6]

Moreover, it is not clear that the limitations indicated by Dr. Dyde are inconsistent with the ALJ's RFC assessment. In addition to the above-limitations, Dr. Dyde states that Plaintiff retains the ability to follow simple instructions, sustain ordinary routines and make simple work-related decisions; that she can response appropriately to supervision, co-workers and work situations, and can deal with change in the routine work setting. How does that assessment square with the ALJ's conclusion that Plaintiff was limited to performing "light work", such as a document preparer or telephone quotation clerk? (Doc. # 4 at 20.) It is not clear. Although Plaintiff raises the specter that her RFC *may* be inconsistent with Dr. Dyde's assessment, that is not enough to warrant remand or reversal. Tenth Circuit precedent allows an ALJ to engage in less extensive analysis where none of the record medical evidence conflicts with her conclusion that a claimant can perform light work. *Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009). Plaintiff does not cite nor does the Court find evidence conflicting with the ALJ's conclusion that Plaintiff can perform light work.

The burden is on Plaintiff to establish "a prima facie case of disability at steps one through four[,]" including the RFC assessment. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The Court's role, in turn, is limited to reviewing "the

---

[6] Additionally, the "limitations" observed by Dr. Dyde are not "impairments." An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Dr. Dyde's "limitations"are better characterized as the product of a given impairment.

*sufficiency* of the evidence, not its weight [.]" Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). So long as that evidence is relevant and adequate to support the ALJ's conclusions,[7] the Court will not disturb the decision. Although there is some doubt regarding whether the RFC is consistent with the limitations indicated by Dr. Dyde, there is no doubt that it is consistent with the opinion of another doctor, Dr. Anthony LoGalbo. (*See* Doc. # 4-3 at 40-47.) And the fact the ALJ expressly gave weight to Dr. Dyde's opinion[8] suggests not that Dr. Dyde's limitations were discarded, but rather that they were considered along with the rest of the medical evidence. Here, the ALJ discussed all of the relevant medial evidence in some detail. Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence in the record and free of legal error.

## IV. CONCLUSION

The ALJ's denial of Plaintiff's applications for disability benefits is supported by substantial evidence in the record and free of legal error. Accordingly, the Commissioner's decision is AFFIRMED.

DATED: March  25  , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[7] *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (defining "substantial evidence").

[8] (Doc. # 4 at 25.)